IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-03483-NRN

S.V.P.,

Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

Defendant.

## OPINION AND ORDER

**N. Reid Neureiter**
**United States Magistrate Judge**

The government determined that Plaintiff S.V.P.[1] was not disabled for purposes of the Social Security Act. AR[2] 28. Plaintiff has asked this Court to review that decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and both parties have agreed to have this case decided by a United States Magistrate Judge under 28 U.S.C. § 636(c). Dkt. #12.

### Standard of Review

In Social Security appeals, the Court reviews the decision of the administrative law judge ("ALJ") to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *See Pisciotta v. Astrue,*

---

[1] Pursuant to D.C.COLO.LAPR 5.2, "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] All references to "AR" refer to the sequentially numbered Administrative Record filed in this case. Dkt. ##11, and 11-1 through 11-10.

500 F.3d 1074, 1075 (10th Cir. 2007). "Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Raymond v. Astrue*, 621 F.3d 1269, 1271–72 (10th Cir. 2009) (internal quotation marks omitted). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The Court cannot reweigh the evidence or its credibility. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

## Background

At the second step of the Commissioner's five-step sequence for making determinations,[3] the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the cervical spine, degenerative joint disease of the right hip, degenerative joint disease of the right knee, degenerative joint disease of the right shoulder, and depression/bipolar disorder. AR 15. The ALJ deemed Plaintiff's additional impairments of an acute ankle sprain; degenerative disc disease of the lumbar spine; chronic cough; fibroids; and post-traumatic stress disorder (PTSD), anxiety, and stress to be non-severe. *Id.* The ALJ also found that Plaintiff's alleged foot pain, carpal tunnel syndrome, "a rare bone disease," and rheumatoid arthritis were not medically

---

[3] The Social Security Administration uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden of proof through step four; the Social Security Administration has the burden of proof at step five. *Lax*, 489 F.3d at 1084.

determinable impairments because they were not supported by any medical records. AR 16.

As will be discussed in more detail below, the ALJ determined at step three that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in the regulations. AR 17. Because she concluded that Plaintiff did not have an impairment or combination of impairments that meets the severity of the listed impairments, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> light work, as defined in 20 CFR 416.967(b), meaning the claimant can lift and/or carry twenty pounds occasionally and ten pounds frequently. The claimant can sit for six hours total out of an eight-hour workday. She can stand and/or walk for four hours total in an 8-hour workday. The claimant can frequently balance. The claimant can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs. The claimant can perform no climbing of ladders, ropes or scaffolds or work at unprotected heights, operate dangerous, unprotected major manufacturing machinery. The claimant can occasionally reach overhead bilaterally. The claimant can frequently reach in all other directions bilaterally. The claimant can understand, remember, and carry out more than simple, but less than complex tasks that can be learned and mastered in up to six months time or less. At such levels, the claimant can maintain concentration, persistence, and pace within customary norms, make routine work-related decisions, plan and set goals, adapt to routine workplace changes, travel, and recognize and avoid ordinary workplace hazards. The claimant is allowed the use of a cane for walking long distances and on uneven terrain.

AR 18–19.

The ALJ found that Plaintiff is unable to perform her past relevant work as a motel maid. AR 26–27. Considering Plaintiff's age, education, work experience, and RFC, and in light of the testimony of a vocational expert ("VE"), the ALJ determined that there are other jobs that exist in significant numbers in the national economy that she can perform, including survey worker, charge account clerk, and printed circuit board

3

screener. AR 27–28. Accordingly, Plaintiff was deemed not to have been under a disability from July 22, 2019 through June 30, 2021, the date of the decision. AR 28.

## Analysis

Plaintiff argues that the ALJ incorrectly determined that she was not disabled on three grounds. First, she claims that the RFC was not supported by substantial evidence because the ALJ did not include all of Plaintiff's work-related limitations. Second, Plaintiff contends that the ALJ improperly discounted her subjective limitations under *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). Finally, Plaintiff claims that the vocational evidence does not support the ALJ's decision that significant numbers of jobs exist in the national economy that Plaintiff can perform. The Court will address each in turn.

## I. Plaintiff's Social Functioning Limitations

Plaintiff first challenges the ALJ's evaluation of the state agency consultants' opinions regarding Plaintiff's social functioning. The state agency consultants opined that Plaintiff had moderate limitations in interacting with others and could have only "infrequent" interaction with the general public. AR 26. Confusingly, the ALJ found this opinion to be "overall persuasive," but then then went on to explain why this limitation was not included in the RFC. This appears to be a scrivener's error, and in the context of social security cases, errors in ALJ decisions have been excused as mere scrivener's errors when the ALJ's intent was apparent. *See Douglas v. Astrue*, 2010 WL 3522298, at *3–*5 (D.S.C. Sept. 3, 2010) (citing and discussing cases). The ALJ's intent here was clear, as she explicitly "did not adopt any limitation involving interaction with the general

4

public, given the lack of overall support for such a limitation." AR 26. Accordingly, the Court will address whether this finding was supported by substantial evidence.

Plaintiff argues that the ALJ's analysis was conclusory. Plaintiff then points out that the VE testified that a work limitation of even occasional interaction with the public would eliminate two of the jobs (survey worker and charge account clerk) that the ALJ found Plaintiff could do.

The Court finds that the ALJ's assessment of Plaintiff's ability to interact with others is supported by substantial evidence. At step three, the ALJ noted that Plaintiff "got along well with family members and friends"; "spoke on the phone with others, could text, and participated in video chats"; and "shopped and went out alone." *Id.* Thus, there was support for the conclusion that Plaintiff had no more than a mild limitation in interacting with others. Then, at step four, the ALJ found that the social limitations suggested by the state agency consultants were not warranted because Plaintiff "had not engaged in any specialized treatment, and there were good, stable, and essentially normal findings [o]n exam. There was no support for any issues with the claimant being around the public. Additionally, no treating source/provider noted the claimant to be anxious, even at emergency room visits." AR 26. The medical consultants' records are consistent with the ALJ's finding—and arguably inconsistent with their own findings of moderate limitation—insofar as they indicate that Plaintiff shopped in stores; regularly went to Walmart, medical appointments, "and families [sic] at least 4 x week so she doesn't get depressed, sometimes needing accompaniment"; got along with authority figures; lived alone with "good support from friends;" and "remain[ed] able to manage a range of routine tasks and social contacts as needed." AR 150–51, 169. Thus, the ALJ

5

adequately explained why she did not include any limitations in interacting with others at step four as unsupported and inconsistent with the record.

Plaintiff also questions the ALJ's reasoning that, because Plaintiff was able to drive a car, she only had mild limitations in understanding, remembering, or applying information, and moderate limitations in concentration, persistence, and pace. But that was not the only reason the ALJ came to these conclusions. With regard to Plaintiff's ability to understand, remember, or apply information, the ALJ also noted: (1) "[t]he record did not reveal that the claimant was limited with regard to her ability to lean, recall, and use information"; (2) Plaintiff "did not demonstrate difficulties understanding and learning new terms, instructions procedures or following one and two-step instructions"; (3) Plaintiff "was of average intelligence and demonstrated good impulse control"; (4) "[t]here was no evidence of hallucinations, delusions, obsessions or homicidal or suicidal ideation and the claimant demonstrated appropriate judgement and insight"; (5) Plaintiff's "mood and affect were normal" and her "associations were intact"; (6) Plaintiff "lives alone and is able to do activities of daily living, cook, clean, and drive"; and (7) she sometimes cares for her young niece. AR 17. And to support her finding that Plaintiff was moderately limited with regard to concentrating, persisting, or maintaining pace, the ALJ stated: (1) Plaintiff was able to manage a range of routine tasks, including driving, managing her finances, and following written instructions; (2) there was no impairment of recent or remote memory; (3) Plaintiff "demonstrated a normal attention span and the ability to concentrate" and she "was able to name objects and repeat phrases"; and (4) she "demonstrated an appropriate fund of knowledge," and

6

her speech, thought content and processes, and cognitive functioning was normal. AR 18.

Thus, Plaintiff's ability to drive was only one part of the ALJ's analysis. And the Court cannot find fault with the ALJ's assumption that the operation of a motor vehicle requires substantial attention, concentration, and situational awareness. Plaintiff's claim that this determination is inconsistent with the RFC, which limited Plaintiff to "less than complex tasks," is unavailing. As Defendant notes, an RFC is the physical and mental limitations that affect what a person can do *in a work setting*, and none of the occupations the ALJ identified at step five require operation of a motor vehicle.

In short, the Court finds that Plaintiff's mental impairments were adequately accounted for in the RFC.

## II. Plaintiff's Subjective Allegations

Plaintiff claims that the ALJ erred in finding that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence. Plaintiff states that her voluminous medical records demonstrate that she suffers from multiple musculoskeletal conditions resulting in chronic pain.

Under SSR 16-3p, the ALJ is required to

> explain which of an individual's symptoms [the ALJ] found consistent or inconsistent with the evidence in his or her record and how [the ALJ's] evaluation of the individual's symptoms led to [the ALJ's] conclusions. [The ALJ] will evaluate an individual's symptoms considering all the evidence in his or her record.

2017 WL 5180304, at *8 (Oct. 25, 2017). In evaluating a claimant's symptoms, it is not enough for an ALJ "to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements

7

about the individual's symptoms are (or are not) supported or consistent.'" *Id.* at *10. Rather, "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*; *see also Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) ("Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.").

Under this rubric, 20 C.F.R. § 404.1529(c)(4) provides the ALJ a framework in evaluating a claimant's own statements concerning her symptoms:

> We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your medical sources or other persons about how your symptoms affect you.

20 C.F.R. § 404.1529(c)(4) (emphasis added); *see also* SSR 16-3p, 2017 WL 5180304, at *6 ("We will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and we will evaluate whether the statements are consistent with objective medical evidence and the other evidence."). If the claimant's statements regarding the intensity, persistence, and limiting effects of her symptoms "are inconsistent with the objective medical evidence and the other evidence, the ALJ must evaluate whether the claimant's "symptoms are less likely to reduce . . . her capacities to perform work-related activities or abilities to function independently, appropriately,

8

and effectively in an age-appropriate manner." *Id.* at *8; *Luthy v. Saul*, No. 17-cv-2206-PAB, 2020 WL 6938300, at *6 (D. Colo. Nov. 25, 2020) (same).

When analyzing a claimant's evidence of pain, courts must consider (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a loose nexus between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain is in fact disabling ("*Luna* factors"). *See Wilson v. Astrue*, 602 F.3d 1136, 1144–45 (10th Cir. 2010) (explaining that these factors are drawn from the Tenth Circuit's opinion in *Luna v. Bowen*). Further, in determining whether a claimant's subjective complaints of pain are credible, the regulations provide that an ALJ may consider the following factors:

(i) daily activities;

(ii) the location, duration, frequency, and intensity of pain or other symptoms;

(iii) precipitating and aggravating factors;

(iv) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms;

(v) treatment, other than medication, received for relief of pain or other symptoms;

(vi) any measures used to relieve pain or other symptoms; and

(vii) other factors concerning functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

That said, this Court is guided by the principle that "[c]redibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence." *Kepler*, 68 F.3d at 391

(internal quotation and citation omitted). "Inconsistencies are a reasonable basis upon which to find a claimant not credible." *Marchand v. Colvin*, No. 14-cv-02533-RM, 2016 WL 1089740, at *8 (D. Colo. Mar. 21, 2016) (citing *Wilson*, 602 F.3d at 1146). So long as the ALJ sets forth the specific evidence he relies upon in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a 'formalistic factor-by-factor recitation of the evidence.'" *Keyes-Zachary*, 695 F.3d at 1167 (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)).

In discounting Plaintiff's statements about the intensity, persistence, and limiting effects of his or her symptoms, the ALJ observed that the "medical evidence did not establish pain of the level and severity that would result in debilitating limitations." AR 20. While acknowledging that Plaintiff had hip and shoulder issues, the ALJ stated that repeated clinical findings noted overall stable findings on examination. *Id.* And while Plaintiff sometimes walked with a limp and/or used a cane, other times she did not. Plaintiff also had two walkers that the ALJ determined were not "medically necessary or used." *Id.*

The ALJ also noted that the robustness Plaintiff's activities of daily living—attending to her personal needs, preparing meals, cleaning, doing laundry, shopping, driving, managing her finances, and spending free time with family and friends—limited the persuasiveness of Plaintiff's allegations as to the severity of her symptoms. AR 21–22.

So far, the ALJ's reasoning is on solid ground. She was entitled to consider Plaintiff's activities of daily living, the clinical findings, and the consistency—or lack thereof—of Plaintiff's symptoms when formulating the RFC. The fact that Plaintiff

disagrees with the ALJ's conclusion, or that there was evidence in the record that might support a finding of disability, is not enough for the Court to find that the ALJ committed a reversible error.

Plaintiff, however, takes exception to the ALJ's finding that she was more active and functional than alleged, based on 2020 medical records that indicate that Plaintiff could perform "heavy work around the house such as scrubbing floors, lifting or moving furniture, climbing two flights of stairs, and could participate[ ] in strenuous sports, such as swimming, tennis, football, basketball." AR 21. The Commissioner reiterated this on the first page of its response brief. Dkt. #14 at 1. But Plaintiff argues that this is a misinterpretation of the medical evidence, as the records at issue refer to Plaintiff's *cardiovascular fitness*, not her musculoskeletal condition. The Court agrees that these records likely do not support a finding that Plaintiff can physically perform strenuous labor or tasks, but the Court bears in mind that the ALJ concluded that Plaintiff could only perform a light range of work. Moreover, these records were not the only ones the ALJ relied on in assessing Plaintiff's subjective claims, so even if this citation were misplaced, the Court cannot say that the ALJ's overall findings are not supported by substantial evidence.

Accordingly, the Court finds that the ALJ did not err in not wholly accepting Plaintiff's statements about the intensity and persistence of her pain.

**III. VE Testimony**

Based on the testimony of the vocational expert, at step five the ALJ found Plaintiff could perform three jobs: survey worker, charge account clerk, and printed circuit board screener. AR 28. The ALJ concluded these jobs existed in significant

numbers in the national economy, with 20,000 survey worker positions, 10,000 charge account clerk positions, and 9,000 circuit board screener positions, amounting to 39,000 positions. *Id.* Plaintiff argues that this number is insufficient for the ALJ to determine that these jobs exist in significant numbers in the national economy.

In *Trimiar v. Sullivan*, the Tenth Circuit listed several factors a judge should consider determining whether work exists in significant numbers, including "the level of claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; [and] the types and availability of such work." 966 F.2d 1326, 1330 (10th Cir. 1992) (quoting *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988)).

The Commissioner argues that an ALJ need only apply the *Trimiar* factors in cases where the ALJ identifies a relatively small number *regional* jobs, and here, the vocational expert only identified national jobs. AR 75. Although there is some authority for this position, *see King v. Berryhill,* No. CV 16-1147 KBM, 2018 WL 851358, at *13 (D.N.M. Feb. 12, 2018) ("Where the focus is on national availability of jobs, however, the particularized *Trimiar* inquiry would confuse the issues."), the Court is not persuaded. First, as Magistrate Judge Jerry H. Ritter recognized, "the Sixth Circuit, from which the *Trimiar* factors were borrowed, does not draw such a distinction" between cases involving national numbers versus regional numbers. *Laney v. Berryhill*, No. CV 17-1062 JHR, 2019 WL 586660, at *5 (D.N.M. Feb. 12, 2019) (citing *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 904 (6th Cir. 2016)). Moreover, the Tenth Circuit has stated that "*Trimiar* does *not* hold that only regional jobs are relevant or that a court must engage in a factoral analysis when the number of jobs relevant available is, as here

(1.34 million), much larger." *Raymond*, 621 F.3d at 1274 n.2 (emphasis in original). Thus, the questions the Court must address are whether the ALJ should have completed a *Trimiar* analysis and, if so, whether her failure to do so was a harmless error; i.e., that 39,000 jobs are significant as a matter of law. The answers to these questions are, respectively, yes and no.

In reaching this conclusion, the Court is guided by the thorough and thoughtful opinion issued by Judge Raymond Moore in *Ladenburger v. Colvin*, No. 15-cv-2182-RM, 2017 WL 1352274 (D. Colo. Apr. 13, 2017). There, Judge Moore determined that the Commissioner had not established as a matter of law that 44,000 jobs in the national economy was significant. Given the similarities between that case and the one at bar, the Court will quote Judge Moore's opinion at length:

> "[I]n [*Allen v. Barnhart*, 357 F.3d 1140 (10th Cir. 2004)], the Tenth Circuit held that "judicial line-drawing in this context is inappropriate, that the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation, and, most importantly, that the evaluation should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Allen*, 357 F.3d at 1144. In *Allen*, because the ALJ did not have occasion to decide whether the number of jobs at issue was significant, the Circuit remanded for consideration of the *Trimiar* factors. *Id.* at 1144-45. The Circuit further stated that affirmance of the ALJ's decision was precluded by *Trimiar* unless it could conclude as a matter of law, which it declined to do, that 100 statewide jobs was so large a number to conclusively establish the requisite numerical significance. *Id.*
>
> The two main differences between *Allen* and this case are: (1) defendant's reliance upon national rather than local jobs; and (2) the fact, here, that the ALJ had an opportunity to decide whether 44,000 jobs nationally was significant. The first difference is of no moment. In order to avoid the factual analysis required by *Trimiar*, defendant must still show that the number of jobs nationally was significant as a matter of law. *See Allen*, 357 F.3d at 1144–45. Here, as discussed *supra*, defendant has failed to do that for the simple reason that defendant fails to point this Court to any direction from the Tenth Circuit that 44,000 jobs nationally is significant as a matter of law. One hundred and fifty two thousand is as close as the case law gets, and for this Court that is not close enough. To the extent that there

13

>   is a "grey area" with respect to the number of national jobs, the Court believes that 44,000 falls squarely within it.
>
>   This leaves the second difference. Here, the ALJ undoubtedly had an opportunity to "give explicit consideration to the factors this [Circuit] has recognized should guide the ALJ's commonsense judgment, such as 'the level of [plaintiff's] disability; the reliability of the VE's testimony; the distance [plaintiff] is capable of travelling to engage in the assigned work; the isolated nature of the jobs; and the types and availability of such work.'" *Id.* at 1144 (quoting *Trimiar*, 966 F.2d at 1330) (alterations omitted). The ALJ's decision, though, did not give explicit recognition to those factors. As far as the Court can discern, the ALJ's decision likely did not even give implicit recognition to them. The ALJ's sole discussion on this front is the boilerplate statement that based upon plaintiff's age, education, work experience, and RFC, she is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. What precisely the Court is meant to review from that, at least factually, is not readily apparent.
>
>   Moreover, as mentioned supra, defendant does not explain what factual analysis the ALJ undertook. The furthest defendant goes is by stating that the ALJ reasonably relied on the testimony of the vocational expert ("VE") in concluding that jobs existed in significant numbers in the national economy. With respect to numbers, though, the VE's testimony is simply that—a number. In other words, from defendant's perspective, provided that the VE gives a number that is sufficient evidence for the ALJ to base its decision upon. That is simply not the case in light of *Trimiar*, and the decisions of the Tenth Circuit interpreting it; specifically those decisions such as Allen where, unless a number is deemed significant as a matter of law, a much deeper factual analysis must be carried out. Even *Raymond* supports this interpretation, given that the only reason the Tenth Circuit did not require a deeper factual analysis was because the parties did not dispute that 1.34 million jobs was a significant number. *See Raymond,* 621 F.3d at 1274 & n.2.
>
>   As a result, the Court believes that the only course is to remand to the ALJ so that the ALJ can provide the factual detail required by *Trimiar*. The ALJ's boilerplate statement at the conclusion of its decision is insufficient in that regard. In addition, the Court does not find that performing the *Trimiar* analysis itself is the correct course of action, given the Tenth Circuit's instruction that such an evaluation should be left to the ALJ. *Allen*, 357 F.3d at 1144.

*Id.* at *4–5.

Here, 39,000 national jobs falls within the same "gray area" identified by Judge Moore, and the Court cannot say it constitutes a significant number as a matter of law.

14

The ALJ had the opportunity to decide, with explicit reference to the non-exclusive factors set forth in *Trimiar*, that this number is nationally significant, but she did not do so. Nor did the VE testify as to the significance of the number of identified jobs. As the Tenth Circuit has stated, "each case should be evaluated on its individual merits." Trimiar, 966 F.2d at 1330. Therefore, "because the ALJ failed to evaluate the *Trimiar* factors and make specific factual findings regarding the numerical significance requirement, [the Court] cannot properly review this issue." *Rhodes v. Barnhart*, 117 F. App'x 622, 532 (10th Cir. 2004) (unpublished); *see Allen*, 357 F.3d at 1144 ("*Trimiar's* insistence on an antecedent exercise of judgment by the ALJ is not novel. On the contrary, it is consistent with, if not compelled by, our broader recognition that as a court acting within the confines of its administrative review authority, we are empowered only to review the ALJ's decision for substantial evidence and . . . we are not in a position to draw factual conclusions on behalf of the ALJ."). Absent the proper analysis by the ALJ, this Court cannot confidently say that 39,000 jobs, spread across several regions of the country, are significant as a matter of fact or as a matter of law.

Moreover, on remand, the ALJ should also determine whether a significant number of jobs exist in several regions in the country, pursuant to 20 C.F.R. § 404.1560(c)(1). Turning again to Judge Moore:

> The pertinent regulation explains that "national economy" in the phrase "significant numbers in the national economy" means jobs in the local region or "in several regions in the country." 20 C.F.R. § 404.1560(c)(1). Here, defendant has disavowed the former type of jobs, i.e. local jobs. However, with respect to the latter, the VE's testimony only provided that there were a total of 44,000 nationally; the VE's testimony did not break those job numbers down by region to explain whether a significant number of jobs exist in several regions in the country, as the regulation requires.

*Ladenburger*, 2017 WL 1352274, at *5.

To be clear, the Court makes no finding that 39,000 jobs in the national economy is or is not a significant number. But absent a detailed analysis of the *Trimiar* factors, the issue must be remanded for further development.

## Conclusion

For the reasons set forth above, the Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings consistent with this decision.

Dated this 16th day of December, 2022.

BY THE COURT:

N. Reid Neureiter
United States Magistrate Judge